804 So.2d 376 (2001)
Robert J. KRAFCHUK, Appellant,
v.
Kathleen A. KRAFCHUK, Appellee.
Nos. 4D00-2349, 4D00-3670.
District Court of Appeal of Florida, Fourth District.
October 3, 2001.
*377 John D. Boykin of Boose Casey Ciklin Lubitz Martens McBane & O'Connell, West Palm Beach, for appellant.
Susan G. Chopin of Chopin & Chopin, West Palm Beach, for appellee.
MIHOK, A. THOMAS, Associate Judge.
Robert Krafchuk timely appeals a final judgment of dissolution of marriage. He raises three issues in his appeal: (1) whether the trial court abused its discretion in fashioning its equitable distribution award; (2) whether the trial court abused *378 its discretion in denying his claim for permanent periodic alimony, and (3) whether the trial court abused its discretion in ordering the ex-wife to remit only fifty percent of his attorney's fees. For the reasons set forth below, we affirm the trial court's order on the first two issues, but reverse and remand on the issue of attorney's fees.
Robert Krafchuk and Kathleen Krafchuk were married on November 8, 1987, in New York. They have two children John Krafchuk, born on November 10, 1988, and Katherine Krafchuk, born on July 2, 1990. On February 17, 1991, both wife and husband were seriously injured in an automobile accident. The husband was rendered totally and permanently disabled from his injuries. In September of 1991, the husband's parents sued the wife, seeking to be named the husband's legal guardians, and on December 14, 1993, the parents entered into an agreement naming them as his guardians. The husband continued to live with his parents, who moved to Florida in 1997. The wife and children remained residents of New York. The formal guardianship continued until December 18, 1998, when it was discharged by the New York court.
On July 15, 1999, Robert Krafchuk filed a petition for dissolution of marriage. On May 25, 2000, the trial court entered its final judgment of dissolution. In the final judgment, the trial judge determined that the wife was entitled to $114,861 in marital assets and that she had $26,353 in nonmarital assets. The trial judge further determined that the husband was entitled to $28,500 in marital assets and that he had no non-marital assets.[1] The trial court denied the husband's claim for permanent periodic alimony. Robert Krafchuk timely filed a notice of appeal on July 5, 2000. On September 19, 2000, the trial judge entered an order on attorney's fees requiring the wife to pay fifty percent of the husband's attorney's fees. Robert Krafchuk appeals the attorney's fees award as well.

Equitable Distribution
Section 61.075(1), Florida Statutes (1999),[2] sets forth the criteria to be considered *379 in awarding equitable marital distribution of assets and liabilities. Undoubtedly, this case presented a unique set of circumstances for the trial judge. But, the trial judge carefully went through the criteria set forth in section 61.075(1), giving his justifications for the distribution in favor of the wife.
One of the first issues which the trial judge had to decide was what date to use for determining marital assets and liabilities. Pursuant to the requirements of Section 61.075(6), Florida Statutes,[3] he chose July 15, 1999, the date that the husband filed his petition for dissolution of marriage. The parties agreed that the trial judge used the correct date.
The next issue for resolution was the duration of the marriage. The trial judge found that the marriage was of short duration. The judge reasoned as follows:
The parties were together as husband and wife for three years three months. The parties were separated on the date of the accident when both were badly injured, February 17, 1991. In every sense of the word, the marriage ended on that date. Due to the litigation initiated by the Husband's parents to establish themselves as his guardians, the Wife was never permitted to resume her role as the wife in the Husband's life. Instead, at the insistence of his parents, the Husband never again lived with his wife and children in the marital home. Instead, he was cared for exclusively by his parents, who were eventually appointed his guardians. The wife's role in the husband's life was reduced to that of an occasional visitor.
The husband argues that the trial court erred in finding that the marriage ended on the date of the accident and was, therefore, a short-term marriage. On this point, we agree with the husband. Clearly, the accident caused the parties to separate and the accident significantly altered the relationship between them. While the trial judge could, and did consider the significantly altered relationship in fashioning his order on equitable distribution and alimony, the trial judge's finding that the marriage ended at the time of the accident was incorrect. The marriage survived the accident. Further, the finding that this was a short-term marriage which ended on the day of the accident conflicts with the implicit finding that the parties *380 continued to accrue marital assets and liabilities subsequent to the accident and up to the husband's filing his petition for dissolution. Thus, we find that the trial court erred in finding that the parties' marriage was of short duration, three years and three months. The trial judge should have found that the marriage was a twelve-year marriage (using the filing date for the petition for dissolution of marriage as the ending date of the marriage). This error, however, as we will explain below, does not require that we disturb the trial court's findings on the issues of equitable distribution and alimony.
In determining equitable distribution, the trial court found that after the tragic accident which left Robert Krafchuk totally and permanently disabled, it was the wife who provided most of the support for herself and her two children. The husband was receiving net monthly income from Social Security of $1,176. The wife's net monthly income from her employment as an accountant was $5,010. Not included in these figures is $650 per month that the husband receives from Social Security for the minor children and pays over to the wife for the children. Although the husband contributed $650 a month from the Social Security disability payment on behalf of the two minor children, the trial court found that the wife, subsequent to the accident, provided well over the majority of the income for herself and the children, even though this situation was due to no fault of the husband. The trial court also found that the assets awarded to the wife in the equitable distribution scheme were all acquired by the wife after the separation of the parties. For example, the trial court found that the wife purchased the marital house from the husband's parents well after the parties' separation, and that the wife's purchase of the house was independent from any financial support given by the husband.
It is well established that a trial court's ruling on the distribution of marital assets is subject to appellate review under an abuse of discretion standard. See Canakaris v. Canakaris, 382 So.2d 1197 (Fla.1980). Thus, the issue here is whether the trial judge abused his discretion in distributing the assets in a manner which favored the wife.
We recognize that as a general rule, marital property should be distributed equally. See Canakaris, 382 So.2d at 1204. However, there can be unequal distribution if justifications for disparity exist. See Bobb v. Bobb, 552 So.2d 334 (Fla. 4th DCA 1989); see also Rodriguez v. Rodriguez, 550 So.2d 16 (Fla. 3d DCA 1989); Halberg v. Halberg, 519 So.2d 15 (Fla. 3d DCA 1987), rev. denied, 528 So.2d 1182 (Fla.1988). In the instant case, there was a definite showing made of a disparity in the contributions of the parties to the marriage, with the wife accumulating all the assets in question by herself after the accident and during the parties' separation. Thus, the trial judge did not abuse his discretion in ordering the unequal marital asset distribution.

Alimony
We also affirm the trial court's decision to reject Robert Krafchuk's claim for permanent periodic alimony. Similar to a trial judge's decision on the distribution of marital assets, a trial judge's ruling on a claim for alimony is subject to appellate review for abuse of discretion. We find no abuse of discretion here. See Canakaris, 382 So.2d at 1202 (stating "[i]f reasonable men could differ as to the proprietary action taken by the trial court, then it cannot be said that the trial court abused its discretion").
*381 In determining whether to award permanent periodic alimony, the court must consider the needs of the spouse requesting the alimony and the ability of the other spouse to make alimony payments. See Adams v. Adams, 604 So.2d 494, 495 (Fla. 3d DCA 1992), rev. denied and cause remanded, 614 So.2d 502 (Fla. 1993).
The factors a trial judge must consider when awarding alimony are codified in section 61.08(2), Florida Statutes.[4] Included in the statutory factors, the court may also consider any other factor necessary to do equity and justice between the parties.
Once again, the trial judge weighed the required criteria thoroughly and fairly. Although the trial court erred in finding the marriage to have been of short duration, this error does not compel that we overturn the court's finding as to alimony. As we noted above, this was a twelve-year marriage. A twelve-year marriage is not considered a short-term nor long-term marriage, but rather falls into a "grey area." When a marriage falls within this "grey area," a determination of entitlement to permanent alimony needs to be decided upon a review of other pertinent factors. See Zeigler v. Zeigler, 635 So.2d 50, 54 (Fla. 1st DCA 1994)(citing Gregoire v. Gregoire, 615 So.2d 694 (Fla. 2d DCA 1992), and Ghen v. Ghen, 575 So.2d 1342 (Fla. 4th DCA 1991)).
One of the most important factors considered by the trial judge was the substantial impact which the accident of February 17, 1991, had on the relationship of the parties. As the trial court noted, because of the accident and the guardianship litigation which followed, "[t]he wife's role in the husband's life was reduced to that of an occasional visitor."
With regard to the parties' standard of living, the trial court found that during their first three years of marriage, they both lived comfortably. Since the accident, the wife had been able to provide for herself and her children. The husband's standard of living, since the accident, was based on what his parents, as guardians, had been able to provide for him, plus his Social Security disability income. The trial court noted that the husband lives in a North Palm Beach home with his mother and a live-in housekeeper. The house has been modified to allow the husband mobility and access by using his wheelchair. The trial judge found that "with the Husband's parents as guardians, an artificially high standard of living was established by and for the Husband, which could not possibly be sustained or approached by the resources available to the Wife at present, or anticipated in the future." The trial court concluded that the dissolution of marriage would not change either of the parties' standard of living.
*382 The trial court also considered the age and condition of the parties: the wife is thirty-eight years old, and the husband is forty-four years old. The court acknowledged that the husband is not able to work at all due to his disability. But, because of the accident and the ensuing guardianship, the husband, the wife and the children never developed a lifestyle nor a standard of living post-injury. Rather, the husband was pulled from the family setting shortly after the accident and had been living with his parents ever since.
Finally, the trial judge reviewed financial resources of the parties. Here, the wife makes $5,010 a month, and the husband nets $1,176 per month in Social Security, with the wife receiving an additional $650 for the children from the husband's Social Security. However, the court found that it has been the wife's income that has contributed the most to the support of the family during the parties' separation. While the additional $650 was helpful to the wife in providing for the children, she still carried the major portion of the financial burden of raising two children for the nine years after the accident. In addition, because the husband lived with his parents, it was the wife who was responsible for raising the children. As the trial judge pointed out, she is the one who has had the "sole responsibility to establish and maintain a family home, transportation, medical care for the children, meals, laundry, maintenance, and all the other chores that go along with raising a family." Furthermore, pursuant to the final judgment of dissolution, it is the wife who is going to furnish health insurance for the minor children and she will bear 100% of the uncovered health care expenses for the children.
The husband argues that our decision in Healy v. Healy, 426 So.2d 1195 (Fla. 4th DCA 1983), and the decision of the Third District in Rosen v. Rosen, 655 So.2d 153 (Fla. 3d DCA 1995), require an award of alimony to him in this case. We disagree. In Healy, this court did not hold that a spouse's disability requires an award of permanent periodic alimony. Rather, this court held that under the circumstances of that case, where the trial court had found an award of alimony to be appropriate, the type of alimony that should have been awarded was permanent periodic rather than the rehabilitative alimony ordered by the trial court. In Rosen, the court was reviewing a twenty-three year marriage where the wife was disabled, but where the husband was the primary wage earner and had for the duration of the marriage provided a comfortable lifestyle for the parties and their children. In Rosen, the court awarded permanent periodic alimony based on several factors, not just the wife's disability.
Here, the marriage was not a long-term marriage as in Rosen, but was rather a "gray area" marriage of twelve years. Further, unlike the husband in Rosen, the wife here had not provided a comfortable long-term lifestyle for the husband. In this case, the husband was pulled from the family setting after the accidentonly three years and three months into the marriageand had been living with his parents ever since.
Although the facts of this case make an analysis under the criteria enumerated in section 61.08(2), Florida Statutes, more difficult than most cases, we cannot say that the trial judge abused his discretion in deciding that the husband was not entitled to alimony payments. See Geddes v. Geddes, 530 So.2d 1011, 1016 (Fla. 4th DCA 1988)("A trial court's decision with regards to the award of alimony is reversible only upon a showing that no reasonable person could arrive at such a result.")(citing Canakaris, 382 So.2d at 1197).

*383 Attorney's Fees

On the issue of attorney's fees, however, we must reverse the trial court's decision.
A determination regarding an appropriate award of attorney's fees in proceedings for dissolution of marriage must begin with the application of section 61.16(1), Florida Statutes, which provides in pertinent part:
The court may from time to time, after considering the financial resources of both parties, order a party to pay a reasonable amount for attorney's fees, suit money, and the cost to the other party of maintaining or defending any proceeding under this chapter, including enforcement and modification proceedings and appeals.... In determining whether to make attorney's fees and costs awards at the appellate level, the court shall primarily consider the relative financial resources of the parties, unless an appellate party's cause is deemed to be frivolous.
In Rosen v. Rosen, 696 So.2d 697, 699 (Fla.1997), the Florida Supreme Court stated that "to ensure that both parties have similar access to competent legal counsel, the trial court must look to each spouse's need for suit money versus each spouse's respective ability to pay."
Here, the trial judge found that the total reasonable attorney's fees and costs incurred by the husband was $16,333. He then ordered the wife to pay fifty percent of that amount. The wife's net monthly income is $5,010 while the husband's net income is only $1,176 a month. Thus, the wife has an income almost 4½ times that of the husband. The wife was awarded $114,861 of the parties' marital worth and the husband only $28,500. The husband has no non-marital assets while the wife has $26,353. In addition, the husband was declared indigent before the attorney's fee hearing. Consequently, it is clear that the husband's need for assistance is great and the wife has the ability to pay.
Based on the husband's great financial need and the wife's ability to pay, we find that the trial judge abused his discretion in ordering that the wife pay only fifty percent of the husband's attorney's fees. We, therefore, reverse the order on attorney's fees and remand to the trial court to enter an order requiring the wife to pay in full the husband's reasonable attorney's fees and costs at trial.
AFFIRMED in part, REVERSED in part, and REMANDED.
SHAHOOD and HAZOURI, JJ., concur.
NOTES
[1] In the distribution, the wife was awarded marital assets as follows: (1) marital residence (net) plus furnishings$65,000; (2) automobile $4,500; (3) wife's 401K$17,645; (4) wife's cash, checking and savings account $2,370; (5) annuity and cash value of life insurance$31,446; and (6) two money market accounts in trust for children $8,000. The wife was assigned $14,100 in marital debts. The husband received his IRA$26,000 and furniture and personalty of $2,500.
[2] Section 61.075(1), Florida Statutes, provides:

(1) In a proceeding for dissolution of marriage, in addition to all other remedies available to a court to do equity between the parties, or in a proceeding for disposition of assets following a dissolution of marriage by a court which lacked jurisdiction over the absent spouse or lacked jurisdiction to dispose of the assets, the court shall set apart to each spouse that spouse's nonmarital assets and liabilities, and in distributing the marital assets and liabilities between the parties, the court must begin with the premise that the distribution should be equal, unless there is a justification for an unequal distribution based on all relevant factors, including:
(a) The contribution to the marriage by each spouse, including contributions to the care and education of the children and services as homemaker.
(b) The economic circumstances of the parties.
(c) The duration of the marriage.
(d) Any interruption of personal careers or educational opportunities of either party.
(e) The contribution of one spouse to the personal career or educational opportunity of the other spouse.
(f) The desirability of retaining any asset, including an interest in a business, corporation, or professional practice, intact and free from any claim or interference by the other party.
(g) The contribution of each spouse to the acquisition, enhancement, and production of income or the improvement of, or the incurring of liabilities to, both the marital assets and the nonmarital assets of the parties.
(h) The desirability of retaining the marital home as a residence for any dependant child of the marriage, or any other party, when it would be equitable to do so, it is in the best interest of the child or that party, and it is financially feasible for the parties to maintain the residence until the child is emancipated or until exclusive possession is otherwise terminated by a court of competent jurisdiction. In making this determination, the court shall first determine if it would be in the best interest of the dependant child to remain in the marital home; and, if not, whether other equities would be served by giving any other party exclusive use and possession of the marital home.
(i) The intentional dissipation, waste, depletion, or destruction of marital assets after the filing of the petition or within 2 years prior to the filing of the petition.
(j) Any other factors necessary to do equity and justice between the parties.
[3] Section 61.075(6), Florida Statutes, provides in pertinent part that:

The cut-off date for determining assets and liabilities to be identified or classified as marital assets and liabilities is the earliest of the date the parties enter into a valid separation agreement, such other date as may be expressly established by such agreement, or the date of the filing of a petition for dissolution of marriage.
[4] Section 61.08, Florida Statutes, provides:

(2) In determining a proper award of alimony or maintenance, the court shall consider all relevant economic factors, including but not limited to:
(a) The standard of living established during the marriage.
(b) The duration of the marriage.
(c) The age and the physical and emotional condition of each party.
(d) The financial resources of each party, the nonmarital and the marital assets and liabilities distributed to each.
(e) When applicable, the time necessary for either party to acquire sufficient education or training to enable such party to find appropriate employment.
(f) The contribution of each party to the marriage, including, but not limited to, services rendered in homemaking, child care, education, and career building of the other party.
(g) All sources of income available to either party.
The court may consider any other factor necessary to do equity and justice between the parties.