850 So.2d 611 (2003)
William FEGER, Appellant/Cross-Appellee,
v.
Nancy FEGER, Appellee/Cross-Appellant.
No. 2D02-1265.
District Court of Appeal of Florida, Second District.
July 23, 2003.
*612 Robert L. Donald of Law Office of Robert L. Donald, Fort Myers, for Appellant.
Debra A. Rowe, Fort Myers, for Appellee.
PER CURIAM.
William Feger appeals the final judgment dissolving his marriage to Nancy Feger and challenges the distribution of marital assets, the denial of his request for alimony, the denial of his request for all of his attorney's fees, and the award to the mother of sole authority to make decisions concerning the minor child. Nancy Feger cross-appeals the court's denial of her special equity in the home, the failure to award her attorney's fees, the child support award, and the denial of her motion to compel her husband to appear in person at the final hearing. We affirm the trial court's ruling finding that no alimony is due to Mr. Feger, but we must reverse the equitable distribution portion of the final judgment because of the court's failure to articulate the standards it used to make its findings. We also remand for the trial court to clarify its inconsistent rulings concerning the parenting arrangements for the minor child. We affirm the cross-appeal.
*613 The parties were married on June 16, 1988, in New York, and separated on September 19, 1998. Their daughter Arianna was born on November 10, 1989. At the inception of their marriage Ms. Feger worked at a local hospital as a registered nurse; Mr. Feger worked as a production manager. Two years later, when Mr. Feger was only forty-seven years old, he suffered a stroke that rendered him severely disabled. Initially, Mr. Feger could neither speak nor walk; now he walks with braces and possesses minimal speech, but he suffers from receptive and expressive aphasia. At trial, Mr. Feger's physician characterized his recovery as good but not excellent. Mr. Feger's speech problems, particularly his difficulty understanding and communicating with others, presented substantial obstacles in the litigation of this matter.
After the stroke, Ms. Feger quit her job to care for her husband, and in 1991 she sold the family home, which was her sole property acquired from a previous marriage, and relocated the family to Cape Coral. The Florida home was acquired, titled, and encumbered in the names of both parties.
Financial support for the family came from multiple sources. Ms. Feger expended funds generated from the sale of her former nonmarital home. Mr. Feger received social security disability income (SSDI) of $1205 per month and a disability payment from his employer's ERISA plan of $1017 monthly. Arianna also receives a social security payment. Ms. Feger returned to work in 1995. By 1998 she was earning more than $46,000 annually and reported an income of approximately $48,000 in 1999. At trial, she testified that her income for the year 2000 was $40,000.
The parties' separation in 1998 occurred when Mr. Feger suddenly and without warning left the marital home with his sister and relocated to Utah. After the separation, Ms. Feger refinanced the marital home, which before refinancing was valued at $300,000 subject to a $91,000 mortgage. Following refinancing, the encumbrance was increased by an additional $120,000.
The court entered a final judgment of dissolution of marriage on July 18, 2001, and amended the judgment pursuant to an order on rehearing entered on September 14, 2001. In pertinent part these orders resolved the issues between the parties as follows:
1. Equitable Distribution. The trial court found that Ms. Feger failed to overcome the presumption that certain jointly owned property acquired during the marriage with her premarital funds was not marital property. Accordingly, the trial court began its equitable distribution plan with the premise that the distribution should be equal unless there was a justification for an unequal distribution. Following an analysis of some of the factors set out in section 61.075(1), Florida Statutes (1997), the court awarded Mr. Feger marital assets valued at approximately $48,000. Ms. Feger received marital assets valued at more than $33,000. In the original final judgment Ms. Feger received the home as a form of child support. In the judgment on rehearing, however, the court awarded her the marital home and its contents as part of its equitable distribution scheme without identifying any further justification for the uneven split of the marital assets.
2. Alimony. No spousal support was awarded to either party. The court noted that although it did not specifically discuss the factors set out in section 61.08, it had made adequate findings throughout the final judgment to formulate a basis for its decision to award no permanent periodic alimony.
*614 3. Attorney's Fees. In its initial judgment the court declined to award Mr. Feger fees and instead determined that each party should be required to pay his or her own fees and costs. However, the trial court expressed concern over the legal positions Mr. Feger advanced at trial, finding his litigation strategy had Rosen[1] implications. On rehearing, the trial court ordered Ms. Feger to pay $4775.37 toward Mr. Feger's court costs and attorney's fees in an attempt to help equalize the distribution of assets.
4. Child Support. In the first version of the final judgment, the court ordered no monetary child support but ordered Mr. Feger to relinquish his interest in the marital home to Ms. Feger as child support. On rehearing, however, the trial court found that Mr. Feger's child support obligation was totally subsumed within the SSDI payments allotted to the child.
5. Parental Responsibility. The final judgment is somewhat inconsistent regarding the award of authority to make decisions for the minor child. In paragraph 7 of the original final judgment the court made extensive findings about Ms. Feger's ability to care for and provide for her child, the fact that the mother is a more fit parent than the father, the superior bonding between daughter and mother as opposed to the father, and the detriment that would result to the child if she were required to travel to Utah for visitation with her father and an aunt that she does not know at all. The court concluded that it would order shared parental responsibility with the wife as primary residential parent. As for visitation, the court found that the father would have to travel to Florida or establish some mutually affordable means of communication. The court ordered the wife to cooperate with the husband in restoring the father-daughter relationship, threatening sanctions for her refusal and reserving jurisdiction to set a specific schedule in the event that face-to-face visits proved feasible. Paragraph 16 of the final judgment afforded Mr. Feger liberal visitation at the child's residence, at his expense.
In paragraph 15 of the original final judgment, however, the trial court designated Ms. Feger as primary residential parent and as "the decision making parent with full authority to make decisions for the minor child." This finding suggests that the court was ordering "sole parental responsibility" to the mother, which is defined in section 61.046(12) as "a court-ordered relationship in which one parent makes decisions regarding the minor child," rather than "shared parental responsibility," wherein "both parents retain full parental rights and responsibilities with respect to their child and in which both parents confer with each other so that major decisions affecting the welfare of the child will be determined jointly," as defined in section 61.046(11). Under section 61.13(2)(b)(2), a court is required to order shared parental responsibility unless it finds that such an arrangement would be detrimental to the child. In its order on rehearing, however, the court stated that it "continues to believe and therefore finds that it did create a parenting plan," albeit unconventional, requiring affirmative action by the father, with the assistance of his caregivers if necessary, to reach out to his daughter.

EQUITABLE DISTRIBUTION
In its judgment the court recognized that section 61.075(1) requires the *615 trial court to distribute marital assets and liabilities between the parties beginning with the premise that an equal distribution should occur. However, where a justification is shown, a trial court may make an unequal distribution. In making an unequal distribution "a trial judge must ensure that neither spouse passes automatically from misfortune to prosperity or from prosperity to misfortune, and, in viewing the totality of the circumstances, one spouse should not be `shortchanged.'" Canakaris v. Canakaris, 382 So.2d 1197, 1204 (Fla.1980) (citing Brown v. Brown, 300 So.2d 719 (Fla. 1st DCA 1974)). An equitable distribution award is reviewed under the abuse of discretion standard. Canakaris, 382 So.2d at 1203; Krafchuk v. Krafchuk, 804 So.2d 376, 380 (Fla. 4th DCA 2001).
The trial court found that in the time between Mr. Feger's stroke and the parties' separation, Ms. Feger expended extraordinary efforts and energy in her roles of wife, mother, therapist, and breadwinner. The final judgment and the subsequent order, however, fail to identify that factor or any other particular factor as a justification for an unequal distribution. A court must provide a legally sufficient factual basis for its unequal distribution of marital assets. Carr v. Carr, 779 So.2d 311, 312 (Fla. 2d DCA 1999); Harreld v. Harreld, 682 So.2d 635, 636 (Fla. 2d DCA 1996). In Harreld, 682 So.2d at 636, this court noted that although the trial court provided a finding that could be read as an explanation for an unequal distribution, the court did not specifically state this was the reason it was distributing the marital assets unequally. Here, as in Carr, 779 So.2d at 312, the trial court erred by awarding the marital home, a major asset, without making a specific finding of fact to justify the unequal distribution. Therefore, we must reverse that portion of the final judgment and remand for the trial court to make the required specific findings.
In reversing the equitable distribution scheme, we are aware that the trial judge obviously found it desirable for Ms. Feger to remain in the home with the minor child. Our opinion should not be construed as foreclosing that option when the court revisits its findings on remand. Rather, the court must specifically address the facts pertinent to each statutory consideration to support its decision to distribute the marital assets in an unbalanced manner, if that should be the trial court's ultimate determination. Although we take no position as to whether the marital assets should be equally or unequally divided, this may be the kind of situation discussed in Krafchuk, 804 So.2d at 380, where justifications exist for disparity in the distribution. As in Krafchuk, the trial court could find that Ms. Feger made significantly greater contributions to the marriage based on her premarital financial situation and her postmarital physical, emotional, and financial sacrifices in the care of her husband, which helped him achieve very good results from his rehabilitation program.

ALIMONY
Section 61.08 authorizes a trial court to award permanent alimony. In doing so, a trial court is required to consider the factors set forth in section 61.08(2) and to make findings of fact. See Staton v. Staton, 710 So.2d 744, 745 (Fla. 2d DCA 1998).
In its order on rehearing the trial court considered the significant alteration of the parties' relationship caused by Mr. Feger's stroke and his precipitous and mysterious relocation, as well as the number of years of intact marriage. See § 61.08(2); Krafchuk, 804 So.2d at 379-80. The court also *616 acknowledged Ms. Feger's significant contributions to the home and to her husband's care. Of most importance, however was the trial court's finding that Mr. Feger failed to present any evidence that he needed alimony. Because there is no basis in the record for us to overturn the court's findings, we affirm the decision not to award permanent alimony to Mr. Feger. However, in recognition of the unique situation of these parties, we remand for amendment of the final judgment to include a reservation of jurisdiction specifically for the purpose of awarding future alimony that might be dictated by changes in the parties' circumstances.

ATTORNEY'S FEES AND COSTS
In its order on motion for rehearing, the trial court awarded Mr. Feger his costs and a portion of his attorney's fees. A trial court is authorized by section 61.16(1) to make such an award after considering the financial resources of both parties. Based upon a review of the parties' relative financial conditions, a trial court may award a portion of the fee amount claimed. Belmont v. Belmont, 761 So.2d 406 (Fla. 2d DCA 2000). Further, as noted by the trial court, the Rosen case, 696 So.2d at 700, provides additional factors for the court's consideration.
With the exception of the trial court's conclusion that there was little merit in trying the equitable distribution scheme, we find sufficient articulated reasons to support the trial court's award to Mr. Feger of $4775.37 for costs and attorney fees. Upon remand, after determining the equitable distribution of marital assets, the trial court may adjust this award upward or make no change.

CHILD SUPPORT AND SPECIAL EQUITY
We affirm, without discussion, the child support award and the denial of Ms. Feger's claim for special equity, as raised in her cross-appeal.

PARENTAL RESPONSIBILITY
We emphasize again that the trial court in this case struggled with a unique situation. The trial judge did not ascribe fault to Mr. Feger for suddenly leaving the marital home, but he recognized, as does this court, that the move to Utah made it virtually impossible for the father to maintain a full relationship with his daughter or to participate in decisions regarding her upbringing. Distance, coupled with Mr. Feger's limited ability to communicate, create barriers that might be insurmountable. Furthermore, Mr. Feger has not specifically proposed a way for him to participate meaningfully in parenting his daughter.
Nevertheless, because we are remanding for the trial court to make findings on other issues, we remand also for the trial judge to clarify the parenting arrangements in accordance with the statutory terms, making findings that would comport either with shared parental responsibility, granting to the mother "the ultimate responsibility over specific aspects of the child's welfare," or with sole parental responsibility. § 61.13(2)(b)(2)(a),(b).

CONCLUSION
We reiterate that the major deficiency in the final judgment is the court's failure to articulate a specific factual and statutory basis for the uneven equitable distribution award, rendering appellate review impossible. On remand, the trial court may revisit the final judgment without holding further hearings, unless the court finds that it cannot comply with the statute without taking additional evidence concerning each party's financial situation. Furthermore, we affirm the trial court's decision to hold *617 a final hearing without requiring Mr. Feger to appear in person.
Affirmed in part; reversed in part; and remanded with instructions.
WHATLEY, CASANUEVA, and COVINGTON, JJ., Concur.
NOTES
[1] Rosen v. Rosen, 696 So.2d 697 (Fla.1997) (holding that relevant factors in determining attorney's fee awards in dissolution cases include the scope, history, and duration of the litigation, as well as the merits of each party's position).