NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

BERNARD L. TER KEURST, IV,        )
                                  )
          Appellant/Cross-Appellee,    )
                                  )
v.                                )          Case No. 2D14-6028
                                  )
KIMBERLY TER KEURST,              )
                                  )
          Appellee/Cross-Appellant.    )
_____    )

Opinion filed October 14, 2016.

Appeal from the Circuit Court for Pasco
County; Daniel D. Diskey, Judge.

Bridget Remington of Himes & Hearn,
P.A., Tampa, for
Appellant/Cross-Appellee.

Charles D. Hinton of Deane & Hinton,
P.A., St. Petersburg, for
Appellee/Cross-Appellant.


SALARIO, Judge.

          Bernard Ter Keurst appeals from a final judgment dissolving his marriage

to Kimberly Ter Keurst, who cross-appeals.  The disputed issues involve the trial court's

equitable distribution decisions concerning the marital home and a beachfront

condominium.  The trial court erroneously awarded the former wife a "special equity" in

these properties in violation of the equitable distribution statute and otherwise failed to follow the procedures set forth therein. We reverse those portions of the judgment, together with the denial of the former husband's motion for attorney's fees, and remand for further proceedings. In all other respects, we affirm without additional comment.

## The Marital Residence

The parties met in April 2008 and moved in together that summer. They married on October 24, 2009, and separated on August 29, 2012. For most of that time, they lived in the former wife's premarital home while the former husband's premarital home was used as a rental property and ultimately sold. A year before they separated, the parties bought a marital home in Odessa, Florida for $450,000. They made a $90,000 down payment—funded in part by a $30,000 loan against the former wife's 401(k) account—and borrowed the balance.[1] The parties also used the home as collateral on a line of credit with an outstanding balance of $71,600.

After the former wife petitioned for dissolution, the trial court directed the sale of the marital home. It sold for $600,000. After repayment of borrowings and other

---

[1]The trial court found that the down payment was funded by a $30,000 loan against the 401(k) account, a $15,000 loan from the former husband's sister that was later paid back, and money earned through the former wife's job during the marriage. Given the trial court's findings regarding the amounts taken from the 401(k) and borrowed from the former husband's sister, the balance of the down payment paid by the former wife's earnings would have amounted to $45,000. We note, however, that the former wife's testimony is not consistent with this amount, and the trial court should reconsider this issue on remand. Further, the former wife's testimony reflects that the 401(k) monies were part disbursement and part loan, although the trial court characterized it as one loan. The former husband does not challenge this characterization, and we therefore do not address it.

- 2 -

expenses, the sale netted $131,381.82. The trial court granted each party a $10,000 draw from those proceeds to cover attorney's fees. That left a balance of $111,381.82.

In the judgment on appeal, the trial court distributed that sum by awarding $70,690.61 to the former wife and $40,690.61 to the former husband. The trial court justified that unequal distribution by awarding the former wife a special equity of $30,000 based upon the $30,000 loan the former wife had taken against her 401(k) account to fund a portion of the down payment on the marital home. The trial court found that the 401(k) account had been funded exclusively with the former wife's premarital earnings and that the former wife was obligated to repay the loan. The former husband asserts that this was reversible error because the legislature abolished awards of special equity in 2008. See ch. 2008-41, § 1, at 737-38, Laws of Fla.

The former husband is correct. Prior to 2008, a trial court was permitted, in appropriate circumstances, to award one spouse a special equity in a marital property in recognition of his or her contribution of premarital funds to the acquisition of that property. See, e.g., Davis v. Carr, 554 So. 2d 669, 669-70 (Fla. 2d DCA 1990). In 2008, however, the legislature amended the equitable distribution statute to provide that "[s]pecial equity is abolished" and that "[a]ll claims formerly identified as special equity, and all special equity calculations, are abolished and shall be asserted as either a claim for unequal distribution of marital property . . . or as a claim of enhancement in value or appreciation of nonmarital property." Ch. 2008-46, § 1, Laws of Fla.; see also § 61.075(11), Fla. Stat. (2013) (setting forth the same language which indicates that special equity must now be examined as an unequal distribution analysis under section 61.075(1)); Jurasek v. Jurasek, 67 So. 3d 1210, 1212 (Fla. 3d DCA 2011).

Under section 61.075(1), a trial court considering a claim for unequal distribution is required to "begin with the premise that the distribution [of marital assets] should be equal, unless there is a justification for an unequal distribution based on all relevant factors."  The statute lists ten specific factors—including, for example, the economic circumstances of the parties, the duration of the marriage, any interruption of personal careers and educational opportunities, and the contribution of each spouse to the marital assets and liabilities—that a trial court must consider when deciding to make an unequal distribution.  § 61.075(1)(a)-(j).  A trial court's decision concerning an unequal distribution must "be supported by factual findings in the judgment or order . . . with reference to the factors enumerated in subsection (1)."  § 61.075(3); see also Feger v. Feger, 850 So. 2d 611, 615 (Fla. 2d DCA 2003) ("[T]he court must specifically address the facts pertinent to each statutory consideration to support its decision to distribute the marital assets in an unbalanced manner . . . .").

Here, although the trial court correctly found that the proceeds of the sale of the marital home were a marital asset, see § 61.075(6)(a)(1)(a) (defining marital assets), it failed to conduct the unequal distribution analysis required by section 61.075(1).  Insofar as the marital home is concerned, the judgment does not reflect any consideration of or findings concerning any of the statutory factors.  Indeed, the judgment does not reflect that the trial judge applied section 61.075(1) to the distribution of the sale proceeds in any respect.  In supporting its decision to award the wife a special equity, the judgment merely recites the facts concerning the former wife's contribution of $30,000 of nonmarital funds to the down payment on the marital home and concludes that, as a result, she should receive a special equity that increases her

- 4 -

share of the sale proceeds.  This cannot be construed as an adequate application of section 61.075(1).

Because the trial court incorrectly relied on the abolished concept of special equity and the judgment does not otherwise contain findings reflecting that the trial court conducted the analysis required by section 61.075(1), we must reverse the trial court's equitable distribution decision concerning the proceeds from the sale of the marital home.  See Davis v. Davis, 32 So. 3d 743, 744 (Fla. 1st DCA 2010) (reversing where "[t]he decree under review contained no findings on statutory factors that could support the unequal distribution of marital property for any reason(s) other than the special equity on which the trial court improperly relied"); see also Kyriacou v. Kyriacou, 173 So. 3d 1111, 1113 (Fla. 2d DCA 2015) ("A trial court's failure to consider whether to award an unequal distribution in light of each of [section 61.075(1)'s] factors is an abuse of discretion.").  On remand, the trial court should apply section 61.075(1) to the facts, make its equitable distribution decision anew, and support its decision with findings specific to each of the factors listed in section 61.075(1).[2]

### **The Beachfront Condominium**

In May 2009—after the parties began living together but before they married—the parties bought a beachfront condominium.  The purchase price was

---

[2]The former wife asserts that the trial court erroneously found that she "received" a withdrawal of $36,000 from the credit line secured by the marital home when in fact she used the withdrawal to make a payment on the beachfront condominium discussed below.  The judgment is unclear as to how the trial court treated this withdrawal, and our reversal necessitates that the trial court revisit the equitable distribution scheme as applied to the marital home.  The former wife is therefore free to raise this issue on remand.

$247,500, which was seller-financed. The parties made a $60,000 down payment, monthly mortgage payments, and annual principal reduction payments. Although disputed by the former husband, competent substantial evidence supports that the down payment and the first principal payment of $30,000 were funded with the former wife's premarital earnings. Subsequent payments appear to have been made from the former wife's earnings during the marriage and a marital line of credit held in both parties' names.

The property was initially titled in the name of both parties as joint tenants with rights of survivorship. After they married, the former husband suggested that the parties change the title to tenants by the entirety. The parties' shared intent in changing the title was to protect the condominium from creditors.

The trial court approached equitable distribution of the condominium as follows. It first found that the condominium was worth $320,000 and that after adjusting for financing, the parties had $268,000 of equity. It then awarded the former wife a special equity of $90,000 to compensate for her contribution of nonmarital funds to the purchase. Next, it found that the former wife had rebutted the presumption that the change in title from joint tenants to tenants by the entireties was a gift to the former husband—resulting in the property's status as a marital or nonmarital asset remaining as it was prior to marriage—but the trial court did not explain how that finding affected the equitable distribution analysis. Nevertheless, it reduced the $268,000 of equity to $178,000 based on the special equity awarded the former wife, awarded one-half of that ($89,000) to the former husband, and awarded the condominium to the former wife.

The former husband asserts that this analysis failed to comply with the procedural requirements of section 61.075, and we agree.

Generally stated, equitable distribution of marital assets is a three-step process: (1) identification of marital and nonmarital assets, (2) valuation of marital assets, and (3) distribution of marital assets as statutorily prescribed. § 61.075(1), (3); see also Austin v. Austin, 12 So. 3d 314, 315 (Fla. 2d DCA 2009) ("With respect to equitable distribution, the trial court is required to identify and value the significant marital assets and designate which spouse is entitled to each asset . . . ."). The trial court's work with respect to each step must be supported by findings identifying marital and nonmarital assets and liabilities and setting forth the value of each marital asset, the responsibility for each liability, and the factors supporting their distribution. § 61.075(3); see also Fotinos v. Fotinos, 74 So. 3d 142, 143 (Fla. 2d DCA 2011). If the trial court fails to make findings sufficient to permit a reviewing court to determine what it did with respect to each step and why, reversal is required. Fotinos, 74 So. 3d at 143 ("Failure to include the statutorily required findings of fact makes appellate review of the distribution scheme impossible and requires reversal."); see also Staton v. Staton, 710 So. 2d 744, 745-46 (Fla. 2d DCA 1998) (reversing, in part, for failure to make findings required by section 61.075(3)).

Thus, the trial court here should first have determined whether and to what extent the condominium was a marital asset and made findings accordingly. The condominium was bought with a down payment from the former wife's nonmarital income and titled in both parties' names as joint tenants prior to marriage and retitled as a tenancy by the entirety thereafter, thus raising questions as to whether the property

was marital or nonmarital in whole or in part. The trial court's finding that the change from joint tenants to tenants by the entirety during marriage was not a gift might lead to the conclusion that each party had a nonmarital interest in the property as joint tenants prior to marriage. Cf. § 61.075(6)(a)(2) (setting forth rule that real property held as tenants by the entireties is presumed to be marital unless shown to be nonmarital). The judgment, however, contains no findings that the condominium is marital in full or that one or both of the parties had a nonmarital interest in it. Furthermore, to the extent the parties may have had some nonmarital interest in the condominium, the judgment contains no findings as to whether any of the enhancement in value and appreciation was marital or nonmarital. See § 61.075(6)(a)(1)(b) (defining "marital assets" to include enhancement and appreciation of nonmarital assets resulting from the efforts of either party during marriage or the expenditure of marital assets thereon); Somasca v. Somasca, 171 So. 3d 780, 782 (Fla. 2d DCA 2015) (establishing that the enhancement in the equity value of nonmarital real property through the use of marital funds to pay mortgage was a marital asset). Without findings as to whether the condominium is marital, nonmarital, or some of both, we are unable to review the trial court's equitable distribution decisions concerning it. See Furbee v. Barrow, 45 So. 3d 22, 24 (Fla. 2d DCA 2010) (reversing where absence of findings complicated review of equitable distribution decisions on appeal); Staton, 710 So. 2d at 745 (reversing "[i]n the absence of such findings, which serve to advise the reviewing court of the trial court's rationale").

Moreover, although the former wife requested an unequal distribution with respect to the condominium under the current equitable distribution statute, the trial court instead granted her a $90,000 special equity. Even if the trial court had made the

necessary findings concerning identification and valuation, we would therefore reverse on this basis nonetheless. See Davis, 32 So. 3d at 744. Unlike its approach to the marital home, the trial court did make an initial effort to analyze the condominium with respect to the factors identified in section 61.075(1), although it did not make findings as to all of the statutory factors. But the trial court then found that the former wife was entitled to a special equity of $90,000 based on all her premarital contributions to the purchase of the condominium. The trial court's injection of the abolished concept of special equity, especially when viewed in light of its previous application of the concept to the marital home, at best renders the judgment ambiguous as to the basis of the equitable distribution determination with regard to the condominium. See, e.g., Healy v. Healy, 834 So. 2d 287, 291 (Fla. 2d DCA 2002) (determining that the trial court's order was ambiguous and instructing that it clarify its findings on remand).

Because the trial court failed to follow the procedural requirements of section 61.075 and erroneously awarded the former wife a special equity, we reverse the trial court's equitable distribution decisions with respect to the condominium. On remand, the trial court should analyze and make findings concerning whether and to what extent the condominium is a marital asset, the value of any marital component of that asset, and the basis for its distribution of any marital component of the asset. And it should do so without resort to the abolished concept of special equity.

### Attorney's Fees

The former husband also asserts that the trial court abused its discretion in refusing to award him attorney's fees. Section 61.16(1) provides that a "court may from time to time, after considering the financial resources of both parties, order a party

to pay a reasonable amount for attorney's fees, suit money, and the cost to the other party of maintaining or defending any proceeding under this chapter."  Here, the trial court awarded each party $10,000 from the sale of the marital home to pay their respective attorney's fees and costs.  After trial, the former husband had a balance of $1550 in attorney's fees, which the trial court refused to award on grounds that the former husband had been awarded $130,000 of liquid assets in the equitable distribution scheme.  Our reversal of the equitable distribution components of the judgment, however, may result in recalculations that affect this decision.  Accordingly, the trial court should reconsider each parties' need under section 61.16 following its equitable distribution recalculation on remand.  See Whittlesey v. Whittlesey, 971 So. 2d 1040, 1042 (Fla. 2d DCA 2008) ("Because the trial court's determination of entitlement to fees was based on the now reversed equitable distribution scheme, the trial court's determination of entitlement to fees must also be reversed.").

## Conclusion

For the reasons set forth above, those aspects of the final judgment addressing the equitable distribution of the marital home and beachfront condominium and the former husband's request for attorney's fees are reversed.  The case is remanded for the proceedings specified in this opinion.  To the extent those proceedings require the trial court to revisit the other aspects of the equitable distribution scheme in the judgment, it is free to do so.[3]  In all other respects, the judgment is affirmed.

---

[3]The judgment identifies as a fact relevant to its equitable distribution determinations that the former husband "voluntarily left his employment" in 2009.  We note for purposes of remand that this finding is not supported by competent substantial

- 10 -

Affirmed in part; reversed in part; remanded.

CASANUEVA and MORRIS, JJ., Concur.

---

evidence. The former husband and the former wife both testified that the former husband lost his job, not that he voluntarily left it.