847 So.2d 1157 (2003)
Sandra Diegel JOHNSON, Appellant,
v.
Irving Douglas JOHNSON, Appellee.
No. 5D02-425.
District Court of Appeal of Florida, Fifth District.
June 27, 2003.
*1158 Eric K. Neitzke, of Eric K. Neitzke, P.A., and Steven J. Guardiano, Daytona Beach, for Appellant.
Ivan K. Clements, Jr., of Ivan K. Clements, Jr., P.A., DeLand, for Appellee.
PLEUS, J.
This is an appeal of a final judgment of dissolution of marriage. The former wife challenges aspects of the equitable distribution as well as the denial of her request for alimony. The parties were married for 13 years and had no children born of the marriage.
The standard of review is abuse of discretion. Canakaris v. Canakaris, 382 So.2d 1197 (Fla.1980). The test to be applied by this court is whether the trial court's order is supported by competent evidence. Kuvin v. Kuvin, 442 So.2d 203 (Fla.1983).
The trial court entered a final judgment which addresses the issues raised by the former wife save for two. A trial court's discretion is abused only where, based on the evidence before the trial court, no reasonable person would take the view adopted by the trial court and "[i]f reasonable men could differ as to the propriety of the action taken by the trial court, then the action is not unreasonable and there can be no finding of an abuse of discretion." Canakaris, 382 So.2d at 1203. We find no abuse of discretion. This opinion will address first the equitable distribution issues and then the issue of permanent alimony.

EQUITABLE DISTRIBUTION
No mention was made by the trial court in the final judgment of a $1,600 tax refund from the year 2000 which was retained by the former husband. No mention was made of proceeds from two life insurance policies on the former husband's late father which the former husband kept for himself. These policies provided death benefits of $12,000 and the former husband testified the policies were purchased with marital funds.
We conclude the trial court erred in failing to divide the tax refund and the life insurance proceeds between the former wife and former husband.

*1159 PERMANENT ALIMONY ISSUE
The uncontroverted evidence was that the former wife had three affairs while married to the former husband. She claims the court denied her alimony because of these affairs. On that issue, the trial judge made the following findings:
14. The Court finds that adultery should not be considered as a bar to alimony in this case because there if [sic] no evidence that the adultery caused the waste or dissipation of marital assets. The Court finds that the adultery caused the marriage to be irretrievably broken.
The crux of the former wife's argument for alimony is that she is 46 years old and suffers from numerous ailments including Crohn's Disease. On the issue of the wife's disability, the court noted:
18. The Court finds that the Wife's Crohn's Disease does not cause her to be totally disabled. The basis for Dr. Cheesman's opinion that the Wife could not work was basically Crohn's Disease would cause her to need to use the bathroom frequently which would be unacceptable to employers. The Court rejects this opinion and finds it unworthy of belief because the uncontroverted and undisputed facts are that the Wife was able to engage in sex with three men, strike up relationships, and carry on affairs with them. Further, the Wife was capable of driving more than 400 miles per week. The Court finds that an office setting is a far more suitable place for someone with Crohn's Disease than an automobile. Therefore, the Court finds that the Wife retains the residual functional capacity to engage in a broad range of sedentary work. Indeed, the Wife currently engages in work that has exertional requirements far greater than sedentary. The Court accepts Dr. Cheesman's opinion as to diagnosis, but rejects his opinion as to disability.
After a thorough review of the transcript, we find competent, substantial evidence in the record to support the final judgment. In Krafchuk v. Krafchuk, 804 So.2d 376, 380 (Fla. 4th DCA 2001), the court noted: "A twelve-year marriage is not considered a short-term nor long-term marriage, but rather falls into a `grey [sic] area.'" When a marriage falls within this "gray area," a determination of entitlement to permanent alimony needs to be decided upon a review of other pertinent factors. We believe the court did just that. See Zeigler v. Zeigler, 635 So.2d 50, 54 (Fla. 1st DCA 1994) (citing Gregoire v. Gregoire, 615 So.2d 694 (Fla. 2d DCA 1992), and Ghen v. Ghen, 575 So.2d 1342 (Fla. 4th DCA 1991)). This is not a case, as the dissent suggests, in which the former wife has passed from relative comfort to poverty or "from prosperity to misfortune."
This case is remanded to the trial court for a modification of the final judgment so that the former wife gets one-half of the tax refund and one-half of the insurance proceeds. Otherwise, the final judgment is affirmed.
AFFIRMED IN PART; REVERSED IN PART; REMANDED.
THOMPSON, C.J., concurs.
SHARP, W., J., concurs in part and dissents in part, with opinion.
SHARP, W., J., concurring in part and dissenting in part.
I agree the trial court erred in not awarding the former wife one-half of various cash assets which were established as marital, but which were not accounted for in the final dissolution judgment. I also agree with the majority opinion that a thirteen-year-old marriage is neither a short term nor a long term marriage, and *1160 accordingly under current case law, it falls in a grey area.[1] However, in my view, the trial court breached its discretion in ruling that the former wife is not entitled to permanent alimony.
In making such a determination the trial court should consider factors other than the length of the marriage.[2] Factors supporting an alimony award here are: the former wife's failing health and disabilities; the disparity in the incomes between the parties, which is even greater than appears on the face of the judgment because of the trial court's improper imputation of income to the former wife; and the fact that the parties enjoyed a relatively comfortable lifestyle during their marriage, which will drastically end for the former wife under the best of circumstances.
With regard to the equitable distribution of the parties' marital assets, the trial court made an effort to make an equal division between the parties of those marital assets addressed by the court. However, at the trial, it was established without dispute that the former husband obtained and kept for his own benefit a $1,600.00 tax refund for the year 2000 and that he also kept and retained $12,000.00 in death benefits from insurance policies which were paid for by marital funds, on the life of the husband's father who was living with the parties at the end of his life. The trial court's failure to deal with these assets makes even more poignant its equal division of the wife's $13,197.00 award for disability compensation from the Social Security Administration in January of 2000, due and owing effective October 1997. Had it dealt with those additional marital assets, they could have off-set the court's award of half of the wife's disability award to the former husband. Since the court did not do so, I agree the case must be remanded for modification of the final judgment to divide the tax refund and insurance proceeds.
But, the major problem in this case, in my view, is the trial court's denial of permanent alimony to the former wife. The parties had few liquid assets, and left the marriage without substantial assets beyond splitting the $67,000.00 equity in the parties' marital home. The former husband was 50 years old at the time of the dissolution and in good health. He had been a home builder and currently works as a truck driver. He earned $2,572.00 net, per month. The parties enjoyed a comfortable middle class standard of living during the marriage, and lived in a three-bedroom home with a pool, in a nice neighborhood.
At the time of the dissolution, the wife was 46 years old and suffered from numerous mental and physical disorders. Her most debilitating condition was Crohn's disease. It causes her to have severe abdominal pains, described as feeling like "labor pains". People with this disease may have to use the bathroom as much as twenty times a day. It rarely goes into remission, and the majority of patients with this disease die due to recurrent infections. This testimony was not refuted.
It was also established at trial that the former wife has a compression of her vertebra in her cervical spine, which limits her ability to turn her head. She has *1161 three compressed disksone of which she said was the result of a fight with the former husband, when he shoved her against a door. She has had two surgeries for this condition, but cannot have surgery on the third disk because the risk of loss of mobility is too high. She can only do work that allows her to look straight ahead. She also has hidradenitis suppurativa (dysfunctional sweat glands), and has suffered from psoriasis, urinary tract infections and kidney infections.
In addition, it was established at trial that the former wife has been treated for severe and chronic depression and anxiety, an eating disorder and an obsessive/compulsive disorder. This disorder causes her to check and recheck the doors of the house to make sure they were locked, and to check all plugs in the house to make sure appliances were unplugged. It could take her from thirty minutes to two hours to be able to leave her home. To keep her various chronic medical and mental problems under control, the former wife takes numerous medications daily, including Sulfasalazine (used to treat bowl inflammation, diarrhea, and abdominal pain from Crohn's disease) eight times a day, an anti-depressant, and an anti-anxiety drug.
The former wife's mental health counselor testified at trial that her functioning level is 41. A person with a score in the 30's is considered psychotic. Most people score in the 70s. The counselor was of the opinion that the former wife's employability has been severely impaired, and she could never rejoin the work force on a regular, full time basis.
Dr. David Chessman, an osteopath who had examined the former wife, reviewed her medical records and consulted with her gastroentrologist, testified at trial. He said the greatest obstacle for the wife to stay in the work force was her unpredictable need to run to the bathroom because of her Crohn's disease. He thought her ability to return to her previous work as a secretary, held some seven years prior to the dissolution, was poor, due to her limited ability to move her neck. In his opinion, the former wife would never be able to return to work on a full-time basis in the future, because her medical problems are permanent. According to Dr. Chessman, the wife would die within a year if her Crohn's disease went untreated.
At the time of the dissolution, the former wife was receiving $712.00 per month in social security disability payments. She worked part time cleaning model homes, and earns from that job $250.00 net, per month. She testified she could not physically work more hours or full time at that job because of her medical conditions. She currently is living in a single-wide mobile home with her boyfriend, who contributes $253.00 per month towards the rent.
Despite the above testimony, which was not controverted, the trial judge found the former wife is not permanently and totally disabled, and that she is capable of working what amounts to a forty-hour week, or full time, at a minimum-wage job. The judge stated that the former wife could earn up to $700.00 per month without losing her social security disability benefits, although no evidence was presented to establish either fact.
Based on this record, the trial judge determined that the former wife's income, post-dissolution would be $1,665.00 per month. This is composed of imputed income of $700.00 per month, "rent" income of $253.00, and $712.00 disability income. It appears the $700.00 figure is gross, not net. Even if the $700.00 imputed income is justifiable, the former wife's income post-dissolution is less than 65% of former husband's net earnings per month. While *1162 noting this is quite a disparity in earnings, the trial judge declared this disparity not so great that permanent alimony is warranted. I disagree.
I also disagree that there is any basis in this record to support the trial judge's imputation of $700.00 income to the former wife. The former husband presented no testimony that the wife had the ability to work full time at a minimum-wage job and earn $700, net per month. When questioned at trial about her need for alimony, the former husband said: "I realize she does need money to survive." In response to further questioning about her need for support funds to live on, he admitted: "Yeah, I imagine she does need some."
In picking out the figure of $700.00the trial judge had only his imagination upon which to relythe source of this number was what he thought she could earn (gross) without losing her social security disability payments. He then used this figure as her "net" in comparing the former wife's with the former husband's projected net incomes, post-dissolution. In order to net $700.00, obviously she clearly will have to earn more than that, and thus jeopardize her social security disability payments. That is clearly erroneous[3] and punitive, and has no support in the evidence.
Merely concluding that the former wife can engage in "sedentary work" is not a sufficient basis to impute income. There was no testimony that the former wife could obtain such a job or hold such a job full time. On numerous occasions, this court has struck findings of imputed income where the trial judge fails to identify with particularity the source of the imputed income, and no evidence of this anticipated source is apparent in the record. See, e.g., Zubkin v. Zubkin, 823 So.2d 870 (Fla. 5th DCA 2002) (imputation of income to father for purposes of child support error where it was supported only by trial judge's comments that he was not convinced father could not earn more than what he was earning); Warner v. Warner, 692 So.2d 266 (Fla. 5th DCA 1997) (imputation of income to husband was error where there was nothing in the record which suggested he was voluntarily underemployed or that he had been anything less than diligent in making efforts to improve his financial picture); Davis v. Davis, 691 So.2d 626 (Fla. 5th DCA 1997) (imputation of income was error where there was no evidence of the anticipated source of the imputed income). Although these rulings have been in favor of the husband, they should apply equally to the wife: "What's sauce for the goose is sauce for the gander."[4]
Thus, in my view, the disparity in the parties' incomes on a net basis, is far greater than found by the court. The former wife's net income per month should have been her social security disability payments of $712.00 per month, plus her current earnings of $250.00 per month. I would not have included the $253.00 per month the former wife's boyfriend pays towards the rent of the mobile home they both share, since that is for his own benefit not hers. The court should have been comparing a $962.00 net monthly income *1163 for the former wife with $2,572.00 net monthly income for the former husband.
This court has stated on numerous occasions that permanent alimony is appropriate if the income of the spouse seeking alimony cannot support that spouse in accordance with the lifestyle established during marriage, and the other spouse can afford to contribute some amount towards the support of the former spouse. Vitalis v. Vitalis, 799 So.2d 1127 (Fla. 5th DCA 2001). For purposes of determining entitlement to alimony, a spouse is not self-supporting just because he or she has a job and income. To the extent possible, a divorced spouse is entitled to live in a manner reasonably commensurate with the standard of living established during the marriage, even if that spouse is employed. Cerra v. Cerra, 820 So.2d 398 (Fla. 5th DCA 2002); Vitalis; O'Neal v. O'Neal, 410 So.2d 1369, 1371 (Fla. 5th DCA 1982). Under her present financial circumstances, the former wife has fallen far below her marital standard of living. The best living situation she can afford is to share a small mobile home.
In my view, the unstated reason in this case for denying the former wife permanent alimony was her admitted adultery. In emphasizing this fact in the majority opinion, the majority tacitly recognizes this is true.
Section 61.08(1), Florida Statutes, allows the trial court to consider the adultery of either spouse and the surrounding circumstances in determining the amount of alimony, if any to be awarded. However the trial judge in this case expressly said the former wife's adultery should not bar an award of alimony because there was no evidence the adultery caused waste or dissipation of marital assets.
Despite that express statement, the judge relied on the circumstances surrounding the adultery to deny the former wife alimony. He rejected the opinion of the wife's counselor that her mental condition precludes her from leaving the house freely and working full time, in part, because she was capable of having an affair. He also rejected her claim that Crohn's disease caused her to be disabled and precluded her from full-time employment, again in part because she had an affair.
The trial judge also seized upon the fact, unfairly, I think, that the wife had previously driven her car in excess of 400 miles per week. I submit this is a factor that should be weighed in her favor and not against her, because the undisputed testimony was that much of this driving was to support the husband's family. The former husband's now deceased father lived with the parties during the last few years of his life. He was an amputee and suffered from Alzheimer's. The former wife drove her father-in-law back and forth to his medical appointments and the VA hospital. She also picked him up from respite care in Lake City. Further, the former wife cared for the husband's mildly mentally retarded daughter, who lived with them also, and who was unable to drive. The daughter had a young infant, and the former wife drove them to doctor appointments, to government agencies for various services, and back and forth from jobs.
In Noah v. Noah, 491 So.2d 1124 (Fla. 1986), the Florida Supreme Court recognized that consideration of adultery, where appropriate under section 61.08, should be limited and not punitive. The court reaffirmed that "the primary standards to be used in fashioning an equitable alimony award are the needs of one spouse and the ability of the other to pay." Noah, 491 So.2d at 1127. In my view, this factor should have played no part in this case.
The critical factors which were clearly established justifying an award of permanent *1164 alimony, were the former wife's serious health and mental problems, her lack of substantial financial resources, and her diminished ability to earn income. In Grimes v. Grimes, 770 So.2d 293 (Fla. 1st DCA 2000), the court reversed a trial court's denial of permanent alimony to the former wife after an approximate twelve-year marriage. The former wife, as in this case, was having serious heath problems, including cancer and depression, which put her ability to continue to work in jeopardy. The court said these were "critical factors" in determining she was entitled to an award of permanent alimony.
Not to award some amount of permanent alimony in this case, is in my view, a breach of discretion. Clearly as a result of the dissolution, the former wife has passed from relative comfort to poverty, or as the Florida Supreme Court said, she has passed "from prosperity to misfortune." Canakaris v. Canakaris, 382 So.2d 1197, 1204 (Fla.1980). I also think it is an abuse of discretion on the part of this court not to award the former wife attorney's fee for this appeal, in view of the considerable disparity between the parties' financial status.[5]
NOTES
[1] See Walker v. Walker, 818 So.2d 711 (Fla. 2d DCA 2002) (twelve-year marriage); Krafchuk v. Krafchuk, 804 So.2d 376 (Fla. 4th DCA 2001) (twelve-year marriage); Nelson v. Nelson, 721 So.2d 388 (Fla. 4th DCA 1998) (12½ year marriage); Young v. Young, 677 So.2d 1301 (Fla. 5th DCA 1996) (15 year marriage); Gregoire v. Gregoire, 615 So.2d 694 (Fla. 2d DCA 1992) (eleven-year marriage).
[2] Escudero v. Escudero, 739 So.2d 688 (Fla. 5th DCA 1999); Zeigler v. Zeigler, 635 So.2d 50 (Fla. 1st DCA 1994).
[3] Brock v. Brock, 690 So.2d 737 (Fla. 5th DCA 1997); Cervoni v. Cervoni, 715 So.2d 282 (Fla. 3d DCA 1998); Warren v. Warren, 629 So.2d 1079 (Fla. 3d DCA 1994).
[4] Artuso v. Dick, 843 So.2d 942 (Fla. 4th DCA, Apr.9, 2003) (failure to make express findings regarding the amount and source of the income imputed to mother for child support purposes warranted reversal); Ice v. Ice, 842 So.2d 220 (Fla. 1st DCA, Apr.8, 2003) (trial court erred in imputing a $25,000 salary to former wife).
[5] § 61.16, Fla. Stat. (in determining whether to make attorney's fees and costs awards at the appellate level, the court shall primarily consider the relative financial resources of the parties); Rosen v. Rosen, 696 So.2d 697 (Fla.1997)(under section 61.16, financial resources of parties is primary factor to be considered); Karpovich v. Karpovich, 739 So.2d 137 (Fla. 5th DCA 1999)(in view of unequal financial earning abilities of parties, ex-husband should have been required to pay some or all of ex-wife's attorney's fees in dissolution proceeding); Akers v. Akers, 518 So.2d 292 (Fla. 5th DCA 1987) (trial court abused its discretion in awarding only a small portion of attorney's fees to wife where former husband had superior ability to pay attorney's fees while wife had no liquid assets and very modest income); Nichols v. Nichols, 418 So.2d 1198 (Fla. 5th DCA 1982) (wife was entitled to an award of attorney's fees where she had no liquid assets and very modest income beyond alimony and child support and husband had superior ability to pay attorney's fees).