927 So.2d 981 (2006)
Stanislaw MATAJEK, a/k/a Stanley Matajek, Appellant,
v.
Leokadia SKOWRONSKA, Appellee.
No. 5D04-2783.
District Court of Appeal of Florida, Fifth District.
March 31, 2006.
Rehearing Denied May 5, 2006.
*983 Leonard R. Ross, Daytona Beach, for Appellant.
Louis Ossinsky, Jr., Daytona Beach, for Appellee.
THOMPSON, J.
Stanislaw Matajek ("Former Husband") appeals the trial court's equitable distribution of marital assets, award of permanent periodic alimony, and determination of entitlement to attorney's fees in a final judgment of dissolution. We affirm in part and reverse in part.
Leokadia Skowronska ("Former Wife") and the Former Husband were married in Poland in August 1983 and separated in Florida in May 2003. They had no children together. At the time of trial, the Former Wife was 54 and the Former Husband was 55.
The Former Wife moved to New York in August 1983, but the Former Husband did not move there until December 1985. She was a registered nurse in Poland and worked as a phlebotomist and an EKG technician in New York. He worked as an unlicensed contractor performing renovations. The Former Husband and his son were partners in a renovation company in New York.
The parties moved to Volusia County in April 2003 and separated shortly after arrival. She remained in the marital home, and he moved into a house with his son and his son's wife.
For support, the Former Wife sought $3,883.88 monthly and alleged no income. At trial, she testified that she had received $28,000 or $35,000 from the Former Husband through an agreement for temporary support, but that no money was left because she had to pay bills. The precise amount she received cannot be determined from the record.
The Former Wife has been unemployed since arriving in Florida. She advertised in two newspapers and telephoned employers for work in phlebotomy, with medical records, or at living facilities, but no one called her back. She did not sign up with an employment service. She testified that she had been under a doctor's care for depression and anxiety.
The Former Husband manages an apartment complex that he owns jointly with his son. The Former Husband stated that he lacked income and borrowed money to pay temporary support. His income cannot be determined from the record, and his financial affidavit was incomplete and inconsistent. He testified that the apartments grossed between $10,868 and $11,780 monthly between January and May 2004, but that apartment expenses were deducted from that income, resulting in a monthly net ranging from a deficit of $2,218 to an income of $1,928. He testified that he lived with and was supported by his son because he has no money.
There are three types of assets or liabilities pertinent to the equitable distribution on appeal. The most significant asset is the apartment complex that the Former Husband owns jointly with his son, who was not joined and did not appear before the court. The Former Husband and son purchased the complex after the parties separated, but before the Former Wife petitioned for dissolution. According to the Former Husband's financial affidavit, *984 the apartments were valued at $1,150,000, subject to an $800,000 mortgage for which the Former Husband and his son were responsible. The Former Wife did not dispute these figures.
The Former Husband testified that he and his son bought the apartments, and that his son had put money into the complex. The Former Husband stated that the apartments cost $350,000 above the $800,000 mortgage. A substantial portion of the purchase price came from the parties' sale of the New York home where they previously lived, for which they received $178,074.15. He further testified that he had used money from the New York sale to purchase the Tampa house in which he lived with his son. The Former Husband testified that other money came from his family in Poland and his son. He also testified that he and his son had no formal written partnership agreement, but that everything between them was split equally.
The second category of assets the Former Husband addresses is the court's valuation of three cars it equitably distributedthe Former Wife's inoperative 1991 Plymouth and the Former Husband's 1993 Ford van and 1996 Chrysler. His financial affidavit alleged that each was worth $2,500, but he testified that he guessed at values. The Former Wife estimated that her car was worth $500, but that his Chrysler was worth approximately $10,000. The trial court accepted the Former Husband's valuation of his two cars, but found that the Former Wife's car was worth $1,000.
Finally, the Former Husband alleges that the trial court erred by not finding that a $63,475 transaction between the husband and his family was a marital liability. The Former Husband received $63,475 from his family in Poland while he and the Former Wife were still married. He testified that this transaction was a loan and that he sent his family a note promising to pay the money back, but he had no copy of the note. The Former Wife testified that the money the family sent the Former Husband was money that he had previously sent them. The Former Husband did not enter any written evidence of the loan or its remaining balance at the time of trial.
The court's final judgment awarded the Former Wife the Port Orange marital home, and equitably divided the Tampa house and apartment complex through an imposition of a lien in favor of the Former Wife. It granted the wife the car she had, valued at $1,000. The court ordered the apartment complex, "presently titled in the joint names of the husband and his son ... equitably divided by the imposition of a lien in favor of the wife." Accordingly, it placed the apartment's $350,000 equity in the husband's column. The court concluded that the Former Wife was entitled to half of the $340,850 of property in the Former Husband's possession. Therefore, she was entitled to $170,425 with 3% interest, payable in five installments of $34,085. This amount was secured by a lien providing that, upon the Former Husband's non-payment, the Former Wife could "accelerate all remaining payments and seek a judgment after notice ordering the husband's interest in the properties [both the apartments and the Tampa house] sold." The court made no written findings regarding the parties' needs or ability to pay. Nevertheless, the court awarded permanent alimony to the Former Wife of $1,500 monthly and awarded her attorney's fees.
The court's statements at trial offer little additional detail. It found the apartment complex was a marital asset because "the bulk of the money, it looks like, that comes down for the [houses] ... and the *985 apartment building in the Clearwater/Tampa area come from the proceeds of that New York sale." The Former Wife requested sale of the properties, but the court noted that it had no jurisdiction to make the son sign a mortgage. Rather, the court elected to impose a time limit on payment, after which the Former Wife could proceed with foreclosure.
With respect to alimony, the court stated: "Now, on the question of alimony, there's been a real cash flow problem here, and II think she is entitled to alimony with a 20-year marriage and the fact that she's unable to find employment at this time. I'm going to award her $1,500 a month going forward." It also held that the wife was entitled to recover some attorney's fees, "probably the majority of them," but reserved for determining the amount on a subsequent hearing.
The appropriate standard of review in a dissolution of marriage is abuse of discretion. Johnson v. Johnson, 847 So.2d 1157, 1158 (Fla. 5th DCA 2003) (citing Canakaris v. Canakaris, 382 So.2d 1197 (Fla.1980)). The trial court abuses its discretion only where no reasonable person would take the view it adopts based upon the evidence before it. Canakaris, 382 So.2d at 1203. This court must determine whether the trial court's order is supported by substantial, competent evidence. Johnson, 847 So.2d at 1158 (citing Kuvin v. Kuvin, 442 So.2d 203 (Fla.1983)).
The Former Husband contends that the trial court erred with respect to equitable distribution of the apartment complex, the family loan, and parties' cars.
The apartment complex is titled in the names of the Former Husband and his son. However, the Former Wife neglected to join the son as a party to the dissolution. The Former Husband contends that the trial court erred by determining that his interest in the apartments was a marital asset.
We find the trial court did not have jurisdiction to adjudicate property rights of non-parties. Minsky v. Minsky, 779 So.2d 375, 377 (Fla. 2d DCA 2000); Schiller v. Schiller, 625 So.2d 856 (Fla. 5th DCA 1993); Ray v. Ray, 624 So.2d 1146, 1148 (Fla. 1st DCA 1993). The trial court recognized this when acknowledging it could not make the son sign a mortgage to enforce the Former Husband's obligation. There is competent, substantial evidence to support the court's finding that the Former Husband used marital funds from the sale of the New York home to acquire his interest in the apartments. Nevertheless, the trial court could not order the distribution to be secured through a lien on the husband's interest in the property. This was precisely the action deemed reversible error by the First District in Ray. Ray, 624 So.2d at 1148. On remand, the court may consider the establishment of an equitable lien only if the Former Husband's son is noticed and joined.
Furthermore, the court committed a mathematical error by placing the apartments' entire $350,000 equity in the husband's column. The Former Husband testified that he and his son worked "half and half." Moreover, he presented unrebutted evidence that the son put money into the property. The Former Husband appears to hold a 50% interest as a tenant in common that he acquired through investing marital assets. Thus, his interest in the apartments' equity would be $175,000 rather than $350,000. Therefore, the court did not award the equitable distribution required by statute, and will have to correct the error on remand. See McPherson v. McPherson, 796 So.2d 1230 (Fla. 4th DCA 2001) (remanding to correct mathematical error affecting equitable distribution scheme); cf. Doyle v.Doyle, 789 So.2d *986 499, 502 (Fla. 5th DCA 2001) (remanding where mathematical error frustrated the trial court's stated intent to award spouse more than 50% of marital property in lieu of alimony).
However, the Former Husband's claims of error with respect to the family loan and the value of his wife's automobile are unavailing. First, the court did not abuse its discretion by declining to find a marital liability in the $63,475 figure that the Former Husband claimed was a loan from his family. The Former Wife disputed his characterization of this transaction as a loan. Moreover, "[n]o written evidence of this indebtedness was introduced in the record below." Santos v. Santos, 773 So.2d 568, 570 (Fla. 3d DCA 2000); cf. Sayegh v. Sayegh, 777 So.2d 1007, 1008 (Fla. 2d DCA 2000). Even if the existence of the debt had been established, the Former Husband's claim of error on this point should fail because no evidence was introduced below to establish that, at the time of trial, "there was any outstanding balance remaining and[,] if so, what the amount was." Id. at 571.
Second, the court did not abuse its discretion in its valuation of the automobiles. The court accepted the values that the Former Husband assigned to the two automobiles that he retained. As to the value of the Former Wife's car, there must be competent, substantial evidence supporting the court's findings on valuation for marital assets. See, e.g., Reddell v. Reddell, 899 So.2d 1154, 1155-56 (Fla. 5th DCA 2005) (quoting Brock v. Brock, 690 So.2d 737, 740 (Fla. 5th DCA 1997)); Nichols v. Nichols, 907 So.2d 620, 623 (Fla. 4th DCA 2005). "This is the attorneys' or prose parties' burden. A trial judge cannot create findings out of thin air." Reddell, 899 So.2d at 1156 (quoting Brock, 690 So.2d at 740). The parties presented scant evidence of value, but the court ascribed a value to the Former Wife's car based on the evidence presented. See Spitulski v. Spitulski, 816 So.2d 1251, 1252 (Fla. 5th DCA 2002). The testimony was that the vehicle was over ten years old and no longer worked. The Former Husband conceded that his estimate of the car's value was a guess and provided no evidence to support a valuation greater than the Former Wife's estimate of $500 or the court's conclusion of $1,000. The Former Husband cannot demonstrate an abuse of discretion where, after he declined to present evidence, the court declined to kick any tires before determining the car's value to be closer to the estimate offered by the Former Wife.
A reasonable award of alimony should not be disturbed on appeal. Bacon v. Bacon, 819 So.2d 950, 952 (Fla. 4th DCA 2002) (citing Canakaris, 382 So.2d at 1204). Although an alimony award is not usually reversed absent an abuse of discretion, an award is erroneous as a matter of law where the trial judge fails to apply the correct rule. Ondrejack v. Ondrejack, 839 So.2d 867, 870 (Fla. 4th DCA 2003). "The trial court's failure to consider all appropriate factors under section 61.08(2) in determining alimony is such an error." Id.
Section 61.08(1), Florida Statutes (2004), requires a court granting alimony to include fact-findings regarding relevant economic factors supporting the award. Subsection (2) enumerates relevant factors:
(a) The standard of living established during the marriage.
(b) The duration of the marriage.
(c) The age and the physical and emotional condition of each party.
(d) The financial resources of each party, the nonmarital and the marital assets and liabilities distributed to each.
(e) When applicable, the time necessary for either party to acquire sufficient *987 education or training to enable such party to find appropriate employment.
(f) The contribution of each party to the marriage, including, but not limited to, services rendered in homemaking, child care, education, and career building of the other party.
(g) All sources of income available to either party.
The court may consider any other factor necessary to do equity and justice between the parties.
The failure to consider these factors frustrates meaningful review of the trial court's award of alimony and constitutes reversible error. Vitalis v. Vitalis, 799 So.2d 1127, 1130-31 (Fla. 5th DCA 2001); see also Peterson v. Peterson, 882 So.2d 528, 530 (Fla. 4th DCA 2004).
The marriage lasted 20 years. The trial court must begin with a rebuttable presumption in favor of an award of permanent alimony. Hill v. Hooten, 776 So.2d 1004, 1007 (Fla. 5th DCA 2001). Even so, the court must determine need and ability to pay. Ondrejack, 839 So.2d at 870; O'Connor v. O'Connor, 782 So.2d 502, 503 (Fla. 2d DCA 2001). To determine need, the court should consider the standard of living the Former Wife enjoyed during the marriage and her age, health, and earning ability. O'Connor, 782 So.2d at 503. The court must do so even where, as here, the Former Husband agrees that permanent alimony is appropriate. O'Connor, 782 So.2d at 503-04; Italiano v. Italiano, 873 So.2d 558, 560 (Fla.2d DCA 2004). The court erred by simply designating the amount of alimony without finding the amount of the Former Wife's need. O'Connor, 782 So.2d at 504.
The court fundamentally errs when it does not make findings regarding the parties' previous standard of living because the failure to do so makes it impossible to determine the alimony award's reasonableness. Nichols, 907 So.2d at 623. The purpose of permanent alimony is to provide for the spouse's needs as they were established by the marriage. Reddell, 899 So.2d at 1156. Here, there was no testimony about the standard of living, and the only record evidence of lifestyle was that the spouses drove old vehicles. This evidence does not establish their standard of living. See Saporito v. Saporito, 831 So.2d 697, 700 (Fla. 5th DCA 2002).
Similarly, the court erred by making no finding regarding the Former Wife's earning ability and failing to factor her potential earnings into the alimony award. O'Connor, 782 So.2d at 505. As an example, the court did not determine whether the Former Wife could acquire work as a phlebotomist or EKG technician; rather, the court stated only that "there's been a real cash flow problem" and noted "the fact that she's unable to find employment at this time." Determining the parties' incomes and earning abilities is vital to determining the proper amount of permanent alimony. Brock v. Brock, 690 So.2d at 742; accord Henin v. Henin, 767 So.2d 1284, 1286 (Fla. 5th DCA 2000). These findings are necessary to establish "an amount sufficient to meet the former wife's reasonable needs measured by the parties' former marital standard of living... limited by the former husband's ability to meet those needs." Id.
Courts generally do not consider appeals alleging insufficient fact-finding where the appellant did not present the issue below at trial or in a motion for rehearing. See Alpha v. Alpha, 885 So.2d 1023 (Fla. 5th DCA 2004); Mathieu v. Mathieu, 877 So.2d 740 (Fla. 5th DCA 2004); Broadfoot v. Broadfoot, 791 So.2d 584, 585 (Fla. 3d DCA 2001). We adopted this rule "subject to one caveat: Since the principal reason *988 for findings of fact in these cases is to allow for meaningful appellate review ..., if the court determines on its own that its review is hampered, we may, at our discretion, send the case back for findings." Mathieu, 877 So.2d at 741 n. 1. In this case, the required findings are neither "express [n]or apparent within the judgment," and meaningful review has been hampered by the lack of findings. Id. at 741. Accordingly, because the basis for the trial court's award is not reasonably clear, we reverse the award of permanent periodic alimony on account of the absence of required findings. Cf. Broadfoot, 791 So.2d at 585. On remand, the court may make the required findings, supported by the evidence, to provide the basis for its alimony award. Saporito, 831 So.2d at 698, 701.
Courts may award attorney's fees in actions for dissolution of marriage after considering the financial resources of both parties. § 61.16, Fla. Stat. (2004). Attorney's fees are based on need and ability to pay. See, e.g., Jones v. Jones, 671 So.2d 852, 854 (Fla. 5th DCA 1996). An award of attorney's fees will not be reversed unless the trial court abused its discretion. Ondrejack, 839 So.2d at 872-73. However, an award of attorney's fees is inappropriate if the parties are left in relatively equal financial circumstances after the dissolution. Brock, 690 So.2d at 742.
The Former Wife argues that, because the trial court reserved jurisdiction to award attorney's fees, the trial court's finding that she was entitled to them is non-final and non-appealable. See Greene v. Greene, 895 So.2d 503, 505 (Fla. 5th DCA 2005); Ritter v. Ritter, 690 So.2d 1372, 1376 (Fla. 2d DCA 1997). The Former Wife also argues that the fees were subsequently determined and were not properly appealed. However, we have "jurisdiction to review the issue of entitlement to fees where the amount was later determined." Ondrejack, 839 So.2d at 872 n. 2.
Because we remand on the issues of equitable distribution and alimony, we also reverse the award of attorney's fees to the Former Wife. See Schiller, 625 So.2d at 862; Minsky, 779 So.2d at 377. Because the trial court's overall plan may change upon reconsideration of its equitable distribution or alimony award, it may consider the award of attorney's fees after refashioning its financial plan. Reddell, 899 So.2d at 1157. Of course, if the court accomplishes an equal distribution of the marital property and equalizes the parties' incomes through alimony, it should not award attorney's fees to either party. Vitalis, 799 So.2d at 1133.
We conclude that the court did not abuse its discretion in its valuation of the parties' automobiles or its determination that the Former Husband did not prove that the family loan was a marital liability. However, the court erred with respect to equitable distribution of the husband's interest in the apartment complex and by awarding alimony without statutorily required findings. Accordingly, we
AFFIRM in part, REVERSE in part, and REMAND for further proceedings consistent with this opinion.
PALMER and MONACO, JJ., concur.