943 So.2d 818 (2006)
Kelle SHEEHAN, Appellant,
v.
Crystal Morgan SHEEHAN, Appellee.
No. 4D05-3243.
District Court of Appeal of Florida, Fourth District.
October 18, 2006.
Opinion Denying Rehearing and Granting Clarification January 3, 2007.
*819 Amy D. Shield of Amy D. Shield, P.A., Boca Raton, for appellant.
Robert M.W. Shalhoub of the Law Offices of Robert M.W. Shalhoub, P.A., West Palm Beach, for appellee.
STEVENSON, C.J.
In this appeal, the former husband challenges the equitable distribution scheme in the order dissolving his nearly seven-year marriage. We affirm in part and reverse in part.
The bulk of the assets of this marriage consisted of the family business, Sheehan Towing, Inc., and rental properties. The business was founded by the husband prior to the marriage and served as the employer and source of income for both parties. The divorce was tumultuous and gave rise to a variety of allegations of "misconduct" on both sides. Approximately one year after the filing of the petition for dissolution, the couple entered into a "Mediated Temporary Relief Agreement." The agreement provided that the wife would operate the business to the exclusion of the husband. The wife was to be responsible for collecting the rents and paying the expenses associated with the rental properties. The husband was to have exclusive possession of the former marital residence (the Carambola property). The wife was to pay the mortgage on the property and the additional sum of $10,000 per month to the husband. The agreement expressly declined to specify whether the payment of these sums was in the nature of support or an advance equitable distribution.
By the time of the trial, the parties had reached an agreement regarding custody and the husband's child support obligation; neither party was seeking alimony. The parties agreed the wife would receive the business and stipulated that the date of valuation for the business and other assets would be December 31, 2003. The parties disagreed about the value of the business, the distribution of the remaining assets, and the treatment to be afforded the payments made to the husband under the mediated agreement. With respect to the business, both parties presented the testimony of an expert witness on the issue of valuation. The experts disagreed as to the appropriate valuation method. Assuming *820 the same approach, however, the experts' figures were relatively in line with one another. The husband's expert ultimately valued the business at $400,000 and the wife's at $88,000.
The couple owned six properties. Four (the Conniston property, the Wilkens Avenue property, the Wilkens Avenue impound lot, and the Alpha property) are rental properties. During the marriage and the pendency of the divorce, the wife collected the rents, paid the expenses, and ensured necessary repairs were made. The rent monies were deposited into a bank account (the rental account); the rental income was used to pay the expenses associated with the rental properties and the mortgage on the former marital residence. The Conniston property was owned by the husband prior to the marriage. In 2004, it generated a profit of $6,706.62 and, during the first five months of 2005, a profit of $617.91. The Wilkens Avenue properties were rented to the business. The Alpha property was located near the business and rented to an employee. In addition to the four rental properties, there was the former marital residence (the Carambola property) and a home that was purchased by the wife with $20,000 taken from the rental account and later sold (the Cozumel property).
While the mediated agreement provided that the wife would pay the husband $10,000 each month, it was agreed that the wife had paid the husband only $35,000 in the approximately fourteen months between the entry of the agreement and the trial. The husband claimed his exclusion from the business and his wife's failure to make the payments required him to liquidate $49,161 from several bank accounts and an IRA to meet his living expenses. The wife insisted the husband had no such need, testifying he had taken $80,000 in cash from a safe in the marital residence. The husband denied this.
In entering the final judgment, the trial court accepted the parties' stipulations regarding custody and child support. It valued the business at $300,000 and awarded the same to the wife in accordance with the parties' agreement. The Wilkens Avenue, Wilkens Avenue impound lot, and Alpha properties were awarded the wife. The husband was awarded the Carambola residence and his non-marital Conniston property. The parties were held jointly responsible for the 2003 income taxes. As for the 2004 taxes, with the exception of the income generated by the Conniston property, the court ordered the wife solely responsible, reasoning that as a consequence of the parties' agreement to value everything as of December 21, 2003, the wife "effectively . . . owned everything as of that time and all the income from the rental properties (except Conniston), the business and everything is her income, from that date forward." The $49,161 removed from the accounts by the husband during the pendency of the divorce was charged to him in the equitable distribution scheme.[1] The $35,000 paid the husband, the mortgage payments on the Carambola residence, and $15,000 in attorney's and accountant's fees incurred by the husband, all of which were paid by the wife under the mediated agreement, were also charged to the husband. The $80,000 the husband was alleged to have taken from the safe and a $5,000 boat deposit that was lost were charged to the husband. After making these distributions, the wife had received $171,387 more than the husband; the judge required the wife to *821 write the husband a check for this amount.
In this appeal, the husband challenges (1) the trial court's valuation of the business, arguing the judge engaged in an impermissible "averaging" of the values testified to by the experts; (2) the trial court's decision to charge the entire amount of the Carambola mortgage payments to him and simultaneous failure to charge the wife with the mortgage payments on the Cozumel property; (3) the trial court's decision to charge him with the $35,000 and the $49,161, which he claims were used for support during the dissolution; (4) the trial court's failure to distribute the profits from the Conniston property to him; and (5) the trial court's charging him with the $15,000 in attorney's and accountant's fees and simultaneous failure to charge the wife with similar fees she incurred. We reject the first of the husband's claims, finding that the valuation assigned to the business by the trial court is supported by competent, substantial evidence and was not the result of improper "averaging" of the experts' values. See Matajek v. Skowronska, 927 So.2d 981, 986 (Fla. 5th DCA 2006) (recognizing "there must be competent, substantial evidence supporting the court's findings on valuation for marital assets"). We also reject the husband's claim of error in the trial court's failure to equitably distribute the profits of the Conniston property. First, based on the evidence at trial, the income from the Conniston property could have properly been treated as marital. See § 61.075(5)(b)3., Fla. Stat. (stating that income from nonmarital assets will be treated as nonmarital "unless the income was treated, used, or relied upon by the parties as a marital asset"). Second, none of the evidence at trial suggested that the profit had not been depleted during the pendency of the dissolution. See, e.g., Plichta v. Plichta, 899 So.2d 1283, 1286 (Fla. 2d DCA 2005) (holding it is error to equitably distribute an asset that has been depleted). And, finally, while the court required the husband alone to bear the tax burden for the Conniston property's rental income, we do not believe that this resulted in any inequity that compels reversal as the wife was required to be solely responsible for the income taxes on the remaining properties despite the fact that both parties benefited from the income. We find, however, that the remainder of the husband's claims have merit.
The wife made a total of $29,839.85 in mortgage payments on the Carambola property (the marital residence). The monies used to make the mortgage payments came from the rents collected on the parties' other properties. During this same period, the wife made $23,072.11 in mortgage payments associated with the Cozumel property. In the equitable distribution scheme, the trial court charged all of the Carambola mortgage payments to the husband and none of the Cozumel mortgage payments to the wife. This was error. Generally, when a husband and wife are jointly responsible for the mortgage on real property and one spouse pays the entire mortgage during the pendency of the dissolution, as part of the judgment of dissolution, the paying spouse is entitled to credit for half the total payments made. See Benz v. Benz, 557 So.2d 124 (Fla. 3d DCA 1990); Golden v. Golden, 410 So.2d 945 (Fla. 3d DCA 1982). It appears that the trial court failed to apply this rule as a consequence of its conclusion that the wife "owned" all of the rental properties and all of the income for those properties as of the December 21, 2003 agreed date for valuation. This agreed date for valuation did not, however, serve to transfer ownership of the properties to the wife as of that date. *822 And, while the wife suggests that the husband's misconduct during the divorce justifies the inequitable treatment, we reject this argument as it clear the trial court intended to effect an equal distribution.
The equitable distribution scheme charged to the husband the $35,000 he was paid during the pendency of the dissolution under the mediated agreement and the $49,161 removed by the husband during the dissolution proceedings. The husband claimed he used these monies to meet his living expenses, pointing to his financial affidavit reflecting nearly $12,000 in monthly expenses not paid by the wife and the wife's failure to pay the agreed upon $10,000 per month. The wife points to the $80,000 the husband took from the safe. Even were the $80,000 considered, the husband's expenses exceeded all sources of payments available to him, including the $49,161 and the $35,000. Thus, we agree it was error to attribute to the husband these depleted assets. See Karimi v. Karimi, 867 So.2d 471, 475 (Fla. 5th DCA 2004) (holding that "[w]here the asset is used by one of the parties out of necessity for reasonable living expenses . . . that asset should not be assigned to the party who used them, absent a finding of misconduct").
Last, the husband was charged some $15,000 in attorney's and accountant's fees paid by the wife under the terms of the mediated agreement. The husband claims that to the extent the payment of these fees was made from marital funds, he should be charged for only half the amount. We agree. To justify attributing the $15,000 in payments to the husband as part of the equitable distribution scheme, the wife's accountant prepared a spreadsheet intended to demonstrate that more than half of the gross income from the business and rental properties was being spent for the benefit of the husband. The math, though, does not justify charging the husband with the entire $15,000 on the ground that he received this much more than his fair share of the income. According to the wife's expert, the total income was $123,083.08, making the husband's half $61,541.54. Exclusive of the $15,000, the spread sheet reflects some $52,742.96[2] was paid for the benefit of the husband. Thus, to get his half share of the income, the husband was entitled to the payment of an additional $8,798.58 on his behalf. After subtracting this amount from the $15,000 in temporary fees paid by the wife, it appears the wife paid some $6,201.42 above and beyond the husband's fifty percent share. Thus, even under the wife's own evidence, the husband could have been charged with only $6,201.42not the entire $15,000. Our conclusion that the husband should not have been charged with the entirety of the Carambola mortgage payments further skews the numbers in favor of the husband.
Finally, we agree that it was inequitable for the trial court to fail to charge the wife with the $13,505.69 she paid her attorneys and accountants during the pendency of the divorce. First, as already indicated, the temporary relief analysis used to suggest the husband had received more than his half share of the income erroneously charged the entirety of the Carambola mortgage payments to the husband. Second, the husband was essentially charged twice for his $15,000, i.e., once to demonstrate he had received at least half of the income during the pendency of the dissolution and again in the equitable *823 distribution. In contrast, by accounting for the wife's fees only as part of her half share of the marital funds, the wife was charged only once. This is clearly not the equitable result the trial court intended.
The order appealed is thus reversed and the matter remanded. On remand, the trial court shall reevaluate the equitable distribution scheme. In so doing, the trial court shall (1) charge the husband with only half the amount of the mortgage payments on the Carambola property made during the pendency of the dissolution and similarly charge the wife with half the amount of the payments, the source of which was joint marital funds, made on the Cozumel property; (2) charge each spouse with half the amount of his or her interim attorney's fees as such fees were paid from joint marital funds, i.e., the rental income from the properties; and (3) remove from the equitable distribution the $84,161 in depleted assets ($35,000 and $49,161) charged to the husband.
Affirmed in Part, Reversed in Part, and Remanded.
STONE and POLEN, JJ., concur.

ON MOTION FOR REHEARING OR CLARIFICATION
PER CURIAM.
To the extent the appellant's motion seeks rehearing of our prior opinion, we deny the same. We grant, however, that portion of the motion seeking clarification. On remand, should the trial court determine that the equities require it, the trial court has the discretion to award the husband interest, accruing from entry of the final judgment of dissolution, on those sums that should have been distributed to the husband, but which the wife has had the benefit of since entry of the final judgment. Cf. Nichols v. Nichols, 907 So.2d 620, 623 (Fla. 4th DCA 2005) (holding trial court has discretion to award interest on payments to be made by spouse to equalize the distribution of assets and liabilities).
STEVENSON, C.J., STONE and POLEN, JJ., concur.
NOTES
[1] In this sense, "charged" means that the amount was included in the total equitable distribution amount to which the trial court found that the husband was entitled.
[2] This figure represents $35,000 in temporary relief, $14,804.67 for the mortgage on the Carambola property, $2,068.52 in boat loans, and $879.77 for lawn equipment from Uncle Ben's.