WARNER, J.
 

 In the final judgment of dissolution, the trial court treated, as a marital asset, life insurance proceeds which the husband received after the filing of the petition of dissolution. We reverse, holding that as of the date of the filing of the petition, the term policy was not a marital asset.
 

 A petition for dissolution of marriage between the husband and wife was filed in 2006 after six years of marriage. Both before and throughout the marriage, the husband and his brother operated several companies dealing in landscaping and nursery plants. In 2002, the brothers purchased “key man” insurance from their insurance agent. Each brother secured two $500,000 term life insurance policies. The applications of insurance admitted into evidence at trial clearly show that the brother was the owner of the policy insuring the brother’s life with the husband as his beneficiary, and the husband owned the policy insuring the husband’s life with the brother as the beneficiary. Copies of the policies were not admitted as evidence. The husband confusingly testified that he owned the policy insuring his brother’s life, and he was his brother’s beneficiary but then retracted that contention and said he really did not know which policies he owned. His accountant testified that the brother owned the policy insuring the brother’s life, and the wife’s accountant conceded that it appeared that the brother owned the policies on the brother’s life. The business paid the premiums for all of the life insurance policies.
 

 Tragically, the brother was killed in an accident a few months after the petition was filed. The husband was paid $1,066,000 on the policies, and at trial the wife claimed that the proceeds constituted a marital asset subject to equitable distribution. In the final judgment the trial eourt found that “these insurance policies and the parties’ beneficial interests clearly existed as of the date of filing which is the cut-off date for identification and classification of marital assets.... ” The court treated the proceeds paid to the husband as a marital asset valued at the payout of $1,066,000 and included them in the equitable division of marital property. The husband appeals the trial court’s final judgment.
 

 The husband contends that the insurance proceeds he received as a beneficiary under the policy were an asset acquired after the filing of the petition of dissolution of marriage and thus not a “marital asset” within the meaning of the statute. The wife contends that because they were purchased with marital funds, they were a marital asset. We agree with the husband that the policies were not a marital asset subject to equitable distribution.
 

 Section 61.075(6)(a), Florida Statutes (2006), defines marital assets as including “assets acquired ... during the marriage, individually by either spouse or jointly by them.” The statute does not define “asset.”
 
 Black’s Lato Dictionary
 
 125 (8th ed. 2004) defines “asset” as “an item that is owned and has value.” Marital assets, thus, are items having value. The cut-off date for determining marital assets in this case is the date of the filing of the petition of dissolution. § 61.075(7),
 
 *398
 
 Fla. Stat. Thus, we must determine whether and to what extent the insurance policies insuring the brother’s life had value at the time of the filing of the petition.
 

 Although the parties argued over whether the husband was the “owner” of the policy insuring his brother’s life, the determination of whether the proceeds of the policy are marital assets turns on the husband’s status as a beneficiary. The value of an owner’s interest in a life insurance policy is the amount of money that the owner may receive by cancelling it, i.e., its cash value. The owner’s interest is separate from the interest as a beneficiary, unless that interest is irrevocable, something not proved in this case. The beneficiary has no beneficial interest or right in the policy or to the proceeds. The beneficiary possesses only an expectancy during the insured’s life.
 
 See Pendas v. Equitable Life Assurance Soc’y,
 
 129 Fla. 258, 176 So. 104 (1937);
 
 Lindsey v. Lindsey,
 
 342 Pa.Super. 72, 492 A.2d 396, 398 (1985) (“the naming of a beneficiary on a life insurance policy vests nothing in that person during the lifetime of the insured; the beneficiary has but a mere expectancy”). We deem that this principle applies even where the husband is also the owner, because the owner can change the beneficiary.
 

 Two cases demonstrate that insurance proceeds triggered by an event occurring after the filing
 
 of
 
 a
 
 divorce are not a
 
 marital asset. In
 
 Lindsey
 
 the husband owned a policy on which he named the wife as beneficiary. After the parties filed for divorce, the husband removed the wife as beneficiary and substituted another woman. During the proceedings, the husband died, and the wife attempted to claim the policy proceeds. The court determined that the proceeds were not a marital asset. Only the cash surrender value of the policy constituted a marital asset in the divorce.
 

 Lindsey
 
 relied on
 
 Bishop v. Eckhard,
 
 607 S.W.2d 716 (Mo.Ct.App.1980), in which a husband changed the beneficiary of his insurance policy from his wife to his daughter during marital dissolution proceedings. The husband then died, and the wife claimed the policy proceeds as a marital asset. In rejecting that claim, the court said:
 

 The appellant’s argument that an insurance policy on the life of one of the parties involved in a dissolution action constitutes marital property is misplaced. To determine the parties’ assets in a dissolution action a whole life insurance policy becomes marital property because of its cash value. It is not to be considered on the basis of the potential for future proceeds.
 

 Id.
 
 at 717-18. Although both
 
 Lindsey
 
 and
 
 Bishop
 
 deal with insurance on the life of the husband involved in a dissolution action, the principles involved also apply to any policy owned by the spouses, even if insuring the life of another.
 

 Life insurance policies with no cash surrender value are not treated as marital assets, because a term policy has no value until the contingency of the death of the insured occurs.
 
 See Vaughan v. Vaughan,
 
 741 So.2d 1221 (Fla. 2d DCA 1999),
 
 receded from on other grounds, Luszcz v. Lavoie,
 
 787 So.2d 245 (Fla. 2d DCA 2001) (noting that a term policy with no cash value did
 
 not
 
 constitute a marital asset). This is the general view around the country.
 
 See C.M.D. v. J.R.D.,
 
 710 S.W.2d 474 (Mo.Ct.App.1986);
 
 McGovern v. Broadstreet,
 
 720 P.2d 589 (Colo.Ct.App.1985);
 
 In re Marriage of Lorenz,
 
 146 Cal.App.3d 464, 194 Cal.Rptr. 237 (1983);
 
 Grost v. Grost,
 
 561 S.W.2d 223 (Tex.Civ.App.1977). Even in the standard family law financial affidavit life insurance is listed in the asset column but as “cash surrender value,” indicating that term insurance with no cash
 
 *399
 
 surrender value is not an asset to be listed.
 
 See
 
 Fla. Family Law Form 12.902(c). The policies in this case were term policies. The policy proceeds were not a marital asset.
 

 The cases relied on by the wife are distinguishable. She cites
 
 Johnson v. Johnson,
 
 847 So.2d 1157 (Fla. 5th DCA 2003), as holding that where marital funds pay for a life insurance policy, the proceeds are a marital asset. The
 
 Johnson
 
 court did hold that life insurance proceeds from a policy purchased by the husband on his father using marital assets must be divided between the parties; however, the facts related in Judge Sharp’s dissent suggest that the father died prior to the parties’ separation. Thus, the proceeds were marital assets, because the policy had been purchased with marital funds
 
 and
 
 the husband had received the proceeds prior to the filing of the dissolution.
 

 The wife cites
 
 Arnold v. Arnold,
 
 967 So.2d 392 (Fla. 1st DCA 2007), for the proposition that the fact that life insurance proceeds may not be paid until later does not prevent them from being classified as marital assets.
 
 Arnold
 
 did not involve life insurance but deferred retirement benefits. These are marital assets under section 61.075(6)(a)l.d. which provides that marital assets include both “vested and non-vestecl benefits ... accrued during the marriage in retirement, pension, profit-sharing, annuity, deferred compensation, and insurance plans and programs.” The deferred retirement benefits involved in
 
 Arnold
 
 were “accrued during the. marriage.”
 

 The insurance proceeds received by the husband were not benefits “accrued during the marriage.” Nor were the term life insurance proceeds a retirement or insurance
 
 plan.
 
 Applying the principle of statutory construction that the meaning of particular terms of a statute may be ascertained by reference to the words associated with it in the statute,
 
 see City of Homestead v. Johnson,
 
 760 So.2d 80, 84 (Fla. 2000), we conclude that the insurance plans or programs referred to in the statute are those which are intended to create value as an asset, such as whole life insurance involving cash surrender value purchased for retirement planning. Term insurance, payable only upon death, is not in the same class of terms as those set forth in the statute.
 

 The husband’s accountant did treat the amount of the premiums paid by the business to secure the policies as a marital asset, even though the evidence suggests that the prepaid premiums might not be refundable and thus not an asset. Despite this, the husband cannot be heard to complain since he offered such in evidence. On remand, the court should include this value in the equitable distribution scheme, rather than the policy proceeds.
 

 We do not address the husband’s second issue regarding the equalizing payment ordered by the court to effect equitable distribution, as the court will have to recraft the equitable distribution award to eliminate the insurance policy proceeds.
 

 For the foregoing reasons, we reverse the final judgment and remand with directions to the trial court to eliminate the insurance proceeds as a marital asset and to include the policy premiums in their stead and then to recompute the equitable distribution.
 

 GROSS, C.J., and CIKLIN, J., concur.